United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA BIRD, | |
| Plaintiff, | No. C 14-3585 PJH |
| v. | **ORDER GRANTING MOTION TO DISMISS; ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT** |
| FIRST ALERT, INC., et al., | |
| Defendants. | |
| _____/ | |

Defendants' motion to dismiss the first amended complaint and plaintiff's motion for leave to file a second amended complaint came on for hearing before this court on April 8, 2015. Defendants appeared by their counsel Robert Herrington, and plaintiff appeared by her counsel Michael Ram, Kirk Wolden, and Ryan Lutz. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss and DENIES the motion for leave to amend.

## BACKGROUND

Two types of smoke detectors or alarms are generally available for purchase by consumers – ionization smoke detectors and photoelectric smoke detectors. Of the two, ionization smoke detectors have sensors that are considered more sensitive at detecting small particles, which are produced in larger amounts by flaming fires; and photoelectric smoke detectors have sensors that are considered more sensitive at detecting large particles, which are produced in greater amounts by smoldering fires that may smolder for hours before bursting into flame.

Plaintiff Cynthia Bird asserts that defendants First Alert, Inc. and BRK Brands, Inc. (collectively, "BRK") failed to adequately disclose the "safety threat" posed by BRK's First Alert® ionization smoke detectors, which she refers to as "Hazardous Smoke Detectors." She claims that ionization smoke detectors are "defective" because they fail to alert building occupants early enough to allow them to safely escape smoldering fires. Plaintiff filed this proposed class action on August 7, 2014, asserting claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.

In the original complaint ("Cplt"), plaintiff alleged that "[i]n the winter of 2011-2012," she purchased a First Alert® Smoke and Fire Alarm with ionization-only technology from Orchard Supply Hardware for her home. Cplt ¶ 65. She asserted that "[t]he smoke detector packaging and labeling" contained no warnings or instructions disclosing or describing the smoke detector's inability to "adequately, effectively, and safely detect, warn, alert, and protect occupants from smoldering-type fires." Cplt ¶ 66. She claimed that "no information provided by [d]efendants discloses the Hazardous Smoke Detectors' safety defect[, and that she] was not aware of these material safety hazards posed by the ionization-only technology smoke detector prior to her purchase." Cplt ¶ 66. She alleged that when she learned about this "defect," she "paid to replace this Hazardous Smoke Detector." She claimed that "[h]ad defendants disclosed this material safety information to [her] prior to her purchase, [she] would not have purchased the ionization-only smoke detector" and would instead have "purchased a different smoke detector – one that protects her and her family and adequately alerts them to both types of fires, including deadly smoldering fires." Cplt ¶ 66.

BRK moved to dismiss the complaint for failure to state a claim, and also moved to dismiss the claims for prospective injunctive relief for lack of Article III standing. Among other things, BRK argued that the packaging for its smoke alarms disclosed the information that the complaint alleged had not been disclosed. With its motion, BRK filed a request for judicial notice, attaching exhibits including high-resolution images of the packaging for BRK

ionization-only smoke alarms distributed in California during the winter of 2011-2012. The images showed statements on the outside of the product packaging regarding the performance of ionization and photoelectric alarms in different types of fires.  On the side panel, next to information regarding the "recommended battery," is a stylized "I" icon and the heading "Ionization Sensors."  Underneath this heading is the statement, "Ionization technology is generally more sensitive than photoelectric technology at detecting small particles, which tend to be produced in greater amounts by flaming fires, which consume combustible materials rapidly and spread quickly.  Sources of these fires may include paper burning in a wastebasket or a grease fire in the kitchen."

Next to this statement is a stylized "P" icon and the heading "Photoelectric Sensors." Underneath is the statement, "Photoelectric technology is generally more sensitive than ionization technology at detecting large particles, which tend to be produced in greater amounts by smoldering fires, which may smolder for hours before bursting into flame. Sources of these fires may include cigarettes burning on couches or bedding."  The side panel also includes, in a separate column and in italicized font and all caps, the statement "FOR MAXIMUM PROTECTION:  Use both types of smoke alarms in every bedroom and on every level of your home."

The back of the packaging also includes the stylized "I" icon with the title "Ionization Smoke Sensor," and the statement, "Generally more sensitive at detecting small particles, which tend to be produced in greater amounts by flaming fires."  The back of the alarm itself includes the stylized "I" icon above the word "Ionization," as well as a warning that the "alarm will not operate if battery is dead, disconnected, or improperly installed" and refers the user to the User's Manual for complete battery replacement list, installation, operating and safety information.

Finally, the User's Manual and instructions included with the alarm incorporate a box containing the words "IMPORTANT! PLEASE READ CAREFULLY AND SAVE" in bold and all caps.  Directly under the table of contents at the beginning of the Manual is a separate box that includes the stylized "I" and "P" icons, along with the disclosure regarding the

performance of ionization and photoelectric alarms in different types of fires. Below this disclosure, in all bold text, appears the statement, "For maximum protection, use both types of Smoke Alarms on each level and in every bedroom of your home." These disclosures appear directly before the portion of the User Manual providing installation and battery-replacement instructions, and are subsequently reprinted in Spanish.

On December 19, 2014, the court issued an order granting BRK's motion to dismiss. The court ruled that plaintiff lacked standing to seek prospective injunctive relief because she stated she had no intention of purchasing the ionization smoke alarm in the future, and that she could not seek restitution under the UCL because she had an adequate remedy at law in the CLRA claim, under which she was seeking damages. The court dismissed the UCL claims and the claim for prospective injunctive relief under the CLRA with prejudice.

The court also noted that the First Alarm® packaging included disclosures about the two types of smoke alarms and the fact that they respond differently to different types of fires, and recommended that consumers utilize both types. The court dismissed the CLRA damages claim because the complaint did not allege when plaintiff looked at the packaging (if ever), whether she reviewed the disclosures on the packaging (if at all), or why she disregarded BRK's recommendation that she use both ionization and photoelectric alarms, and did not allege any facts showing that BRK's disclosures were inadequate. The court found further that the CLRA claim sounded in fraud because it was "based on the allegedly fraudulent omission of material disclosures or statements," but that the complaint failed to allege any material omissions with particularity. The court dismissed the CLRA damages claim with leave to amend.

Plaintiff filed the first amended complaint ("FAC") on January 20, 2015, adding factual allegations, and asserting a single cause of action under the CLRA. In the FAC, plaintiff alleges that "[i]n the winter of 2011-2012," she "purchased a First Alert ionization-only technology smoke detector from Orchard Supply Hardware for her home." FAC ¶ 87. The facts alleged in the FAC regarding the purchase are similar to those alleged in the original complaint, with two main exceptions.

4

First, in the original complaint, plaintiff asserted that the smoke alarm packaging did not disclose that ionization-only smoke alarms do not effectively warn or alert building occupants about smoldering fires. In the FAC, plaintiff effectively acknowledges that the packaging does in fact disclose the difference between the two types of alarms, and does recommend that purchasers use both types of alarms "for maximum protection." However, she asserts that the disclosures would not be obvious to an ordinary consumer because the print is very small and the disclosures are located on the side of the package, not on the front. See FAC ¶ 89.[1]

Second, in the original complaint, plaintiff alleged that she herself purchased the smoke alarm. In the FAC, plaintiff asserts that she "sent her husband, Darrell, to make the purchase." FAC ¶ 87. She then alleges, presumably on information and belief, that Darrell went to the smoke detector/alarm section at Orchard Supply and chose a First Alert ionization-only smoke detector; that he looked at the front and back of the package to confirm that the smoke detector was battery operated; that he did not notice the statements on the side of the package regarding the two types of smoke detectors, or the recommendation that consumers purchase both types; that nothing on the package alerted him to the fact that an ionization-only smoke alarm does not effectively detect smoldering fires; and that he took the alarm home and placed it on the kitchen table. See FAC ¶ 88. It was only after Darrell arrived home with the smoke detector that plaintiff looked at the smoke alarm package. See FAC ¶ 89.

Otherwise, the FAC advances essentially the same theory as the original complaint:

---

[1] In the present motion, BRK again requests that the court take judicial notice of attached high-resolution images of the packaging for its ionization-only smoke alarm that was available in California during the applicable period. Plaintiff did not object to the prior RJN, but now objects on the basis that the images "do not reflect the manner in which the packaging is received and viewed by consumers" because the attached exhibit presents an image of the flattened packaging on one-sided sheet of paper, not as the actual packaging that a consumer would see in a store. The court is not persuaded there is any practical distinction between reading the disclosures on the flattened package and reading the disclosures on the package as a consumer would see it on a store shelf. Because the packaging materials are referenced in the FAC, have been authenticated, and are central to plaintiff's claims, the court finds it appropriate to take judicial notice of the packaging that is attached as Exh. D to BRK's request for judicial notice.

5

that there are two principal types of smoke detector technology – ionization and photoelectric; that BRK has long been aware that ionization smoke detectors are not effective at detecting smoldering fires; that BRK continues to sell ionization smoke detectors despite knowing that they do not effectively detect smoldering fires; and that the packaging for BRK's First Alert® ionization smoke detectors omitted to state that the ionization smoke detectors did not provide enough escape time to prevent injury or death during most smoldering fires, in violation of Civil Code §§ 1770(a)(5) and 1770(a)(7). See FAC ¶¶ 2-3, 13, 17-62, 79, 95-100.

Moreover, plaintiff asserts, the print on the side of the packaging is in a small type font that is unlikely to be seen or read by a reasonable consumer, and even if read is likely to deceive reasonable consumers because it omits material safety information and fails to incorporate an adequate warning with material safety information. FAC ¶¶ 73-80.

On February 16, 2015, BRK filed the present motion to dismiss the FAC. On March 3, 2015, after BRK filed its motion to dismiss but before the opposition was due, plaintiff filed a motion for leave to file an SAC to add her husband Darrell Bird as an additional plaintiff in the case (claiming he "has since volunteered to be a plaintiff").

**DISCUSSION**

A.  Motion to Dismiss

    1.  Legal standards

        a.  Dismissal for lack of standing

Standing is a jurisdictional limitation. It is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing is not subject to waiver; like subject matter jurisdiction, it must be considered by the federal courts even if the parties fail to raise it. See United States v. Hays, 515 U.S. 737, 742 (1995); United States v. Ceja-Prado, 333 F.3d 1046, 1049 (9th Cir. 2003). The burden is on the party who seeks the exercise of jurisdiction in his or her favor to "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." Hays, 515 U.S. at 743.

To establish a "case or controversy" within the meaning of Article III, a plaintiff must, at an "irreducible minimum," show an "injury in fact" which is concrete and not conjectural, a causal connection between the injury and defendant's conduct or omissions, and a likelihood that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61; see also Allen v. Wright, 468 U.S. 737, 751 (1984). Added to these basic requirements are several judicially created prudential limitations -- the requirements that a plaintiff's claim fall within the zone of interests sought to be protected by the statute or constitutional guarantee in question; that the claim be for injury to the plaintiff's own legal rights and interests, rather than the legal rights of interests of third parties; and that the injury be individualized or confined to a discrete group. See Allen, 468 U.S. at 751.

b.      Dismissal for failure to state a claim

A motion to dismiss for failure to state a claim tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (court may consider matters that are properly the subject of judicial notice); No. 84 Employer-Teamster Jt. Counsel Pension Tr. Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003) (court may consider documents referenced in complaint and documents forming the basis of the plaintiff's claims).

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed under Federal Rule of Civil Procedure Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or to allege sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual

7

allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level[,]" and a motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).  A claim has facial plausibility when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (falsity must be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"). The allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (citation and quotation omitted). The plaintiff must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992-93 (9th Cir. 1999).

2.   BRK's motion

BRK argues that the FAC should be dismissed because plaintiff lacks standing to bring a claim under the CLRA; because she cannot show cannot show reliance, causation,

8

or injury; and because the allegations in the FAC still fall short of what is required to satisfy Rule 9(b). The court finds that the motion must be GRANTED.

### a. Lack of standing

As explained above, plaintiff alleged in the original complaint that she purchased the smoke alarm, but in the FAC she asserts that it was her husband, Darrell, who made the purchase. BRK argues that if plaintiff did not purchase the smoke alarm, she has no standing to assert a claim of misrepresentation or false advertising under the CLRA (and moreover, that she must have known at the time the original complaint was filed that the statement that she had purchased the smoke alarm was false). BRK contends that this lack of standing cannot be cured by now alleging that it was actually Darrell who purchased the smoke alarm.

In opposition, plaintiff does not directly address the question of standing, focusing instead on whether the FAC adequately alleges reliance, causation, and damages (discussed more fully below). In her discussion of the facts, she contends that she "sent" Darrell "as her agent" to purchase the smoke alarm. In her argument regarding reliance, she asserts that reliance is shown by the allegations that she "purchased" a smoke alarm from Orchard Supply, and that she sent Darrell "to make the purchase." She adds that "[t]he funds were of course community property."

The court finds that under the facts as alleged, plaintiff does not have standing to assert a claim under the CLRA. Standing under Article III of the Constitution has three basic elements: (1) an "injury in fact," which is neither conjectural nor hypothetical, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61. To satisfy the "injury in fact" element, "the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979).

To establish standing to bring a claim under the CLRA, plaintiff must meet an

9

economic injury-in-fact requirement, which is the same as the corresponding requirement under Article III of the U.S. Constitution. Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015). That is, to establish standing under the CLRA and other consumer protection statutes, the plaintiff must have "'suffered injury in fact and ha[ve] lost money or property as a result.'" Salazar v. Honest Tea, Inc., 2014 WL 2593601, at *8 (E.D. Cal. June 10, 2014) (citing Cal. Civ. Code § 1780). The phrase "as a result" means "caused by" and requires, at the pleading stage, that the plaintiff allege a causal connection or reliance on the alleged misrepresentation. Kwikset v. Super. Ct., 51 Cal. 4th 310, 326 (2011).

Where the challenged conduct consists of assertedly false advertising or false labeling, the standing requirements are satisfied if the plaintiff alleges facts showing that she would not have made the purchase but for the representation. See Mazza v. American Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012). Here, plaintiff alleges that had BRK disclosed the "material safety information" to her prior to her purchase, she would not have purchased the ionization-only smoke detector, but would instead have purchased a smoke detector that alerts building occupants to both flaming and smoldering fires. FAC ¶ 91.

This allegation might be adequate to allege standing under the CLRA were it not for one small detail – the smoke detector was purchased by Darrell, not by plaintiff. FAC ¶¶ 87-88. Thus plaintiff could not have relied on anything disclosed (or not disclosed) on the packaging in making the decision to purchase that particular smoke alarm, and could not have been injured by the purchase. The court is not persuaded by plaintiff's assertion that she suffered injury based Darrell's use of "community funds" to purchase the smoke alarm. The fact remains that it was Darrell, not plaintiff, who chose to purchase the First Alarm® ionization-only smoke detector. As a non-purchaser of the smoke alarm, who was not even present when the purchase decision was made, plaintiff lacks standing to assert a claim under the CLRA.

      b.    Failure to allege reliance, causation, damages

BRK asserts that the CLRA claim must be dismissed for failure to state a claim because plaintiff has not, and cannot, allege facts showing reliance, causation, or

10

damages. First, BRK contends that the new allegations in the FAC show that plaintiff cannot establish reliance, because she herself did not purchase the smoke alarm at issue, she did not view the packaging in the store prior to the purchase, she did not decide which alarm to purchase, and she did not pay anything for the alarm.

Second, BRK argues that plaintiff fails to allege damages or causation because the FAC does not plead facts showing an actual injury resulting from the disclosures included with the BRK alarm. BRK asserts that plaintiff's theory of harm appears to be that she purchased a "hazardous" ionization-only alarm, and needed to buy an additional alarm in order to be alerted to both types of fires. However, BRK contends, even had plaintiff alleged facts showing she purchased the ionization-only smoke alarm, she could not show any cognizable injury unless she alleged facts showing she paid more for a combination-alarm replacement than she would have paid to purchase a photoelectric alarm to go along with the ionization-only alarm she had already purchased.

In opposition, plaintiff asserts that the FAC adequately alleges reliance, causation, and damages sufficient to state a claim under the CLRA. She argues that her CLRA cause of action is based on "fraud by omission," and that "safety" omissions, such as those alleged in the FAC, are material and create a presumption of reliance. She complains that BRK is attempting to focus solely on herself (the plaintiff), notwithstanding that she has informed BRK that her husband, Darrell, has "volunteered" to be a plaintiff. She asserts that BRK refused to stipulate to add Darrell as a plaintiff, and that she has therefore been forced to file a motion for leave to amend the complaint to join him as a plaintiff.

Plaintiff notes that the FAC alleges that "[i]n the winter of 2011-2012," she "sent" Darrell to Orchard Supply to purchase a smoke detector for their home, that Darrell purchased a First Alert® ionization-only smoke detector, and that in making this purchase Darrell reviewed the front and the back of the package, which she claims adequately alleges reliance. She also contends that the FAC alleges that nothing on the package disclosed the "material safety defect inherent in all [BRK's] ionization-only smoke detectors," which she asserts adequately alleges causation. She argues that the FAC also

11

alleges that had BRK adequately disclosed this "material safety information" to her husband and herself, prior to their purchase, they would not have purchased the smoke alarm at issue, which she claims adequately alleges damages.

As for BRK's contention that she did not pay anything for the alarm, she responds that she did, because she "sent" Darrell, to the store to purchase the alarm, and he used "community funds" to make the purchase. As for BRK's argument that her theory of harm is that she purchased an ionization-only alarm and needed to buy an additional alarm that would adequately alert her to both types of fires (flaming and smoldering), she responds that she did not want a "defective smoke detector in addition to an adequate smoke detector" and the claim that she suffered no economic injury is therefore a fabrication. She contends that because she did not receive "full use" of the smoke detector, and was compelled to "replace it," she has adequately alleged economic injury.

The CLRA makes unlawful various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods to any consumer." Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 639 (2009). To state a claim under the CLRA, plaintiff must allege misrepresentation, reliance, causation, and damages. See In re Sony PS3 Othe OS Litig., 551 Fed. Appx. 916, 920 (9th Cir. 2014) (citing Marolda v. Symantec Corp., 672 F.Supp. 2d 992, 1002-03 (N.D. Cal. 2009)).

The CLRA protects consumers from deceptive practices that are "intended to result or which result[ ] in the sale or lease of goods or services." Cal. Civ. Code § 1780(a). Because plaintiff did not make the decision as to which alarm to buy, and did not review the packaging until after Darrell had purchased the smoke alarm, she cannot establish reliance, causation, or damages.

        c.     Failure to allege fraud with particularity

BRK argues that the CLRA claim must be dismissed because plaintiff has failed to plead fraud with particularity as required by Rule 9(b). BRK contends that the smoke alarm packaging discloses that the ionization-only smoke alarm is not as effective at detecting

12

smoldering fires as a photo-electric alarm, and recommends using both types of alarms for maximum protection, and that plaintiff pleads no facts showing that the disclosures were false or misleading.  BRK notes that the FAC claims the disclosures were "hidden," "tiny," and hard to understand, but alleges no facts showing they were "hidden" or "inadequate," or that she herself could not understand them once she had read them.

BRK contends that the FAC fails to remedy other deficiencies identified by the court in its prior order – e.g., that plaintiff had alleged no facts showing when she looked at the packaging (if ever), whether she reviewed the disclosures on the packaging (if at all), or why she disregarded BRK's recommendation that she use both ionization and photoelectric smoke alarms.

BRK also asserts that the new allegations regarding "material omissions" are not sufficient to support a claim under the CLRA.  In the FAC, plaintiff alleges that BRK failed to disclose that their ionization-only smoke detectors (1) do not adequately warn of slow smoldering fires; (2) may take 30 minutes or longer to sound an alarm in a smoldering fire; (3) may not respond at all to a slow smoldering fire; (4) have a high probability of failure to detect smoldering fires; (5) are prone to significantly more nuisance alarms, which may lead to disablement; and (6) have been determined inadequate in detecting smoldering fires and banned by numerous local governments and fire safety organizations.  See FAC ¶ 68).  Plainiff asserts that to remedy these "omissions," BRK should have included a warning label advising that unlike photoelectric smoke alarms and smoke alarms incorporating both photoelectric and ionization technology, an ionization-only smoke alarm will not provide sufficient time to escape most smoldering fires.  See FAC ¶ 69.

BRK argues that the first, second, third, and fourth "omissions" are little more than "lawyer-crafted characterizations" regarding the alleged performance of ionization smoke alarms in some smoldering-type fires, and that plaintiff alleges no facts showing that what BRK actually disclosed – that consumers should use both types of alarms – is materially different from the alleged omissions.  BRK contends that if plaintiff had read the disclosures, she would have understood that ionization and photoelectric alarms may

13

perform differently in different types of fires and that she should use both types of alarms for maximum protection.

With regard to the fifth "omission" – that BRK failed to disclose that ionization alarms are "prone" to nuisance alarms, which can "lead to disablement" – BRK argues that this claim is not actionable because plaintiff does not allege that she experienced "nuisance" alarms or that she disabled her alarm, and because it ignores the disclosures on the packaging, in the User's manual, and on the alarm itself, warning against disabling the alarm. Finally, BRK argues that the sixth "omission" – that the packaging failed to disclose that certain jurisdictions have "banned" ionization-only alarms – is not material because fraud claims cannot be based on omissions of law.

In opposition, plaintiff contends that the FAC satisfies the requirements of Rule 9(b). She asserts that she has pled the alleged "fraudulent omission" with the requisite specificity, again citing FAC ¶¶ 79-80, where she alleges that it was "unlikely" that a reasonable consumer would see the disclosures on the packaging the print was so small and the information comparing the two types of alarms was on the side of the package rather than on the front or the back of the package with a big "Warning" label.

She asserts that the FAC adequately pleads the "who" (herself, Darrell, and BRK), the "what" (the alleged omission concerning the "known safety defect;" the "when" (the winter of 2011-2012); the "where" (Darrel reviewed the package at OSH and purchased it there, and she reviewed the package at home); and the "how" (defendants provided an inadequate disclosure and omitted a material safety hazard). She asserts that these allegations are "much more than the law requires," and that it is clear from BRK's filings that defendants are aware of what the case is about. She suggests that BRK is improperly attempting to argue the case on the merits.

As for BRK's argument that the FAC is not responsive to the comments made by the court in the prior order – that the original complaint did not allege when plaintiff looked at the packaging, whether she reviewed the disclosures on the packaging, and why she disregarded the recommendation to purchase both types of alarms – plaintiff responds that

14

the FAC alleges that Darrell reviewed the packaging at the OSH in the winter of 2011-2012, and she reviewed the packaging at home after he laid it on the table for her to view; that the FAC alleges that both she and Darrell reviewed the front and back of the packaging but neither noticed the small print on the side of the package.  As for why she did not notice the disclosures, plaintiff contends that it was because the font was too small and the disclosures were located on the side panel, whereas "reasonable consumers" would look on the front and back of the package.

Finally, plaintiff contends that the FAC sufficiently alleges facts showing that the "disclosures" are inadequate.  Again, she repeats that the disclosure is not located on the front of the package, but instead on what she considers "the least conspicuous place on the entire package."  She asserts further that the disclosure fails to meet the Consumer Product Safety Commission's most basic guidelines for presenting "safety" and "hazard" information – to place it in a conspicuous location with a bold "Warning" label.

She also contends that the allegations regarding the six "material omissions" are supported by the underlying facts alleged in the FAC – facts about defendants' "knowledge of the safety hazard that gives rise to a duty to disclose."  She also asserts that the FAC gives defendants clear notice of a type of warning that would not be deceptive.

A plaintiff can state a claim under the CLRA by alleging either an affirmative misrepresentation or a failure to disclose defects.  See, e.g., Rasmussen v. Apple, Inc., 27 F.Supp. 3d 1027, 1032 (N.D. Cal. 2014).  Here, plaintiff alleges that "through omission and concealment," BRK has "misrepresented that [the smoke detectors] "have characteristics, uses or benefits that they do not have (Section 1770(a)(5));" and that they "are of a particular standard, quality or grade when they are of another (Section 1770(a)(7))."  FAC ¶ 95.  Plaintiff also asserts that BRK "know[s] and ha[s] known" that if it disclosed the "true facts about the dangers posed by" the ionization-only smoke detectors, consumers would not purchase them, and that BRK has "awareness from its prior experience in lawsuits alleging the same defect."  FAC ¶¶ 103-105.

While fraud is not an essential element of a claim under the CLRA, see Marolda, 672

F.Supp. 2d at 1002, it is clear that the gravamen of plaintiff's CLRA claim in this case is fraud. See FAC ¶¶ 95-105. CLRA claims grounded in fraud must satisfy Rule 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); In re Toyota Motor Corp. Unitended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig., 754 F.Supp. 2d 1145, 1170 n.17 (C.D. Cal. 2010).

The court finds that the FAC fails to satisfy Rule 9(b). In particular, the FAC fails to plead facts showing when the transaction occurred (other that "the winter of 2011-2012"), when plaintiff reviewed BRK's disclosures (other than that she "looked at" the packaging "after" Darrell brought the smoke alarm home and put it on the kitchen table), what disclosures she reviewed, and why BRK's disclosures are inadequate (other than that the print was small, the disclosures were not placed on the front of the package, and the packaging did not include an additional warning using the exact language that plaintiff believes was required).

These allegations are insufficient. Rule 9(b) requires "the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). The allegation about the date of the purchase is extremely vague, and the reference to the period "after" Darrell brought the package home spans a lengthy period from "winter 2011-2012" until the present. As for "what," the FAC alleges only that plaintiff "looked at the packaging" but "did not notice" the information on the side panel. These allegations are insufficient, as plaintiff provides no details regarding exactly what she reviewed.

As for "why" the disclosures were inadequate, plaintiff claims she sufficiently alleged that they were in "tiny" font on the side of the packaging rather than on the front or the back of the packaging. Nevertheless, she does not allege that the front of the packaging contained any affirmative misrepresentation, but rather that the explanation of the difference between the performance of ionization-only smoke alarms and the performance of photoelectric smoke alarms was placed on the side of the package rather than on the front or back.

16

What is left is the allegation that the disclosures were in "tiny" font and were "hard to read." Plaintiff cites no law requiring that disclosures on product packaging regarding the qualities or characteristics of the product be in any particular size font or format. Nor does she allege that she was unable to read the disclosures – just that she "did not notice them." Moreover, while she indicates that Darrell was able to read the statement "9V Battery included," she now asserts that he also "did not notice" the statement <u>immediately above</u> the statement about the battery, which reads, "Ionization Smoke Sensor. Generally more sensitive at detecting small particles, which tend to be produced in greater amounts by flaming fires."

As for whether the six "material omissions" can form the basis of a fraud claim, plaintiff has not addressed the fifth and sixth omissions. As for the remaining omissions, they are all variants of the idea that ionization-smoke alarms may not perform as well as photoelectric smoke alarms in detecting smoldering fires – which is the same message that is conveyed by BRK's disclosures on the smoke alarm packaging. The FAC does not plead with particularity why the alleged omissions were false or misleading, and thus fails to satisfy Rule 9(b). <u>See</u> <u>Bias v. Wells Fargo & Co.</u>, 942 F.Supp. 2d 915, 932 (N.D. Cal. Apr. 25, 2013) (citing <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994)). In addition, the two subsections of the CLRA that plaintiff claims were violated are § 1770(a)(5) (unlawful to represent that goods or services "have characteristics, . . . uses, benefits, or quantities that they do not have"), and § 1770(a)(7) (unlawful to represent that goods or services "are of a particular standard, quality, or grade, . . . if they are of another"). But nowhere in the FAC does plaintiff allege any facts showing that BRK misrepresented the characteristics or qualities of its ionization-only smoke alarms, or failed to disclose that they were of a lower standard than represented.

Plaintiff repeatedly refers in her opposition to an alleged "safety defect," and characterizes the ionization-only smoke alarms as "defective" smoke alarms. The issue of "defective" products and consumer fraud-by-omission claims was addressed in <u>Wilson v. Hewlett-Packard Co.</u>, 668 F.3d 1136 (9th Cir. 2012). In that case, the plaintiff asserted a

claim under the UCL and the CLRA based on an allegedly concealed design defect in HP's laptop computers. The "defect" was the fact that the laptops were likely to cease working and require repair, after the expiration of the warranty period. Id. at 1139. The CLRA claim alleged violation of the same two subsections that are at issue in this case (§ 1770(a)(5) and (a)(7)).

Hewlett-Packard argued that for liability to attach, the allegedly concealed fact must relate to a safety issue. The Ninth Circuit agreed, stating that "California courts have generally rejected a broad obligation to disclose," and that generally "a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or safety issues." Id. at 1141. The court asserted that courts have held that a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation, or a safety issue. Id. Here, plaintiff has not alleged any affirmative misrepresentations by BRK, and has not alleged any defect in the ionization-only smoke detectors that raises any safety concerns.

Notwithstanding the repeated references to "defective" smoke alarms and "safety defects," plaintiff alleges no facts showing that the smoke alarms were in fact "defective" or "unsafe." The packaging clearly discloses that the product is an ionization-only smoke alarm, and that ionization-only smoke alarms are more sensitive to flaming fires, and that photolectric smoke alarms are more sensitive to smoldering fires. Plaintiff alleges no facts showing that BRK's ionization-only smoke alarms are ineffective in detecting flaming fires.

What is prohibited by the CLRA is misrepresenting the quality or characteristics of the product or service (whether through affirmative misrepresentation or omission), and a showing that the plaintiff relied on that misrepresentation or omission. There is nothing in the CLRA that imposes a requirement regarding the placement or content of safety warnings or disclosures, so long as the manufacturer does not misrepresent the quality or characteristics of the product. Moreover, the information plaintiff claims was omitted was in fact included on the packaging and in the user's manual. Plaintiff's real argument is not that the disclosures were inadequate or misleading, but that the font was too small to read

18

(although she does not allege that either she or Darrell was unable to read it).

C.     Plaintiff's Motion for Leave to Amend the Complaint

   1.     Legal standard

Federal Rule of Civil Procedure 15 requires that a plaintiff obtain either consent of the defendant or leave of court to amend its complaint once the defendant has answered, but "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); see also, e.g., Chodos v. West Pub. Co., 292 F.3d 992, 1003 (9th Cir. 2002) (leave to amend granted with "extreme liberality").

Leave to amend is thus ordinarily granted unless the amendment is futile, would cause undue prejudice to the defendants, or is sought by plaintiffs in bad faith or with a dilatory motive.  Foman v. Davis, 371 U.S. 178, 182 (1962); Smith v. Pacific Properties and Dev. Corp., 358 F.3d 1097, 1101 (9th Cir. 2004).  The decision is within the court's discretion, and should be guided by Rule 15's purpose: decision on the merits.  DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987). A court need not grant leave to amend if an amendment would be an "exercise in futility." Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

   2.     Plaintiff's motion

Plaintiff seeks leave to file a second amended complaint to join her husband, Darrell Bird, as a plaintiff.  BRK opposes the motion.  The court finds that the motion must be DENIED.

It is true, as plaintiff argues, that leave to amend is granted with "extreme liberality." Chodos, 292 F.3d at 1003.  However, a plaintiff cannot cure his/her lack of standing by adding another plaintiff.  See Almeida v. Google, Inc., 2009 WL 3809808 at *2 (N.D. Cal. Nov. 13, 2009) (citing Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1023 (9th Cir. 2003) (where the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal).

Accordingly, because the court finds that the FAC must be dismissed for lack of standing, the request for leave to amend is moot.

**CONCLUSION**

In accordance with the foregoing, defendants' motion to dismiss is GRANTED. Because the court finds that plaintiff lacks standing to bring this action, the dismissal is WITH PREJUDICE. As a further basis for dismissal, the court finds that the FAC fails to state a claim under the CLRA. The motion for leave to file a SAC is DENIED as moot.

**IT IS SO ORDERED.**

Dated: June 15, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge